[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT RENEHANS' MOTION TO STRIKE THE FOURTH COUNT
In this case, the Renehans are the owners of the premises which they leased to Lucky's Café. The suit arises out of the death of the plaintiff's decedent. The plaintiff sue the Renehans in two counts. In count three they allege negligence. It is alleged that the death was caused by the Renehans' negligence in leasing to the café and/or their negligently failing to enforce the terms of their lease and their failure to monitor the cafés compliance with the lease. This is true because the Renehans knew or should have known of the café's dangerous CT Page 14069 business practices; the plaintiffs claim the police were called to the premises 257 times. The café was known for its drug activity according to the complaint. Furthermore, the café breached the lease agreement which called for compliance with city and state laws "more specifically, the café served liquor to people who were underaged. The café also did not carry liability insurance and failed to enforce the lease. The café did not comply with state law prohibiting persons under 21 from entering the establishment and did not have enough or adequate security personnel. All of this constituted negligence according to the complaint which the plaintiffs allege led to the death of the plaintiff's decedent.
A fourth count also directed against the café is labeled "intentional". It says the death was caused by the Renehans leasing of the premises to the café and "their intentional failure to enforce the terms of the written lease agreement entered into between the Renehans and the. . . . café"
It then repeats the factual allegations of the third count which, as noted, sounds in negligence. The court will review the specific allegations of count four later in this opinion.
The Renehans have filed a motion to strike the fourth count of the revised complaint. They claim there is no tort for intentional leasing or for intentional failure to enforce a lease. Also, they argue, "no liability with respect to the lease runs to third parties. Such as the plaintiff's decedent, absent privity between the Renehan defendants and the plaintiff's decedent." Privity has not been alleged and facts indicating such privity have been set forth in the complaint.
It is difficult to refer to specific cases to deal with the issues raised since they are so fundamental to general tort law and the classifications in that law. The court believes the fourth count does not set forth an intentional tort claim as distinguished from a negligence claim. The Restatement (Second) Torts in Section 8 A defines "intent" as follows:
 "The word `intent' is used throughout the Restatement of this Subject to denote that the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it."
CT Page 14070
As the commentary goes on to note: "`Intent' as it is used throughout the Restatement of Torts has reference to the consequences of an act rather than the act itself."
An example is given of an individual who fires a gun in the middle of the Mojave Desert — the actor intends to pull the trigger but when the bullet hits someone present in the desert, without the actor's knowledge, the actor does not "intend" that result. The Restatement commentary goes on to say: "Intent is not, however, limited to `consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to' result from his act, and still goes ahead he is treated by the law as if he had in fact desired to produce the result."
In Prosser and Keeton on Torts (Fifth Ed.) § 8, it is noted that there are two major divisions of legal liability, negligent and intentional torts. This "distinction" according Prosser "is one of the most basic, organizing concepts of legal thinking." Id. p. 33. At page 34, Prosser goes on to define the most common usage regarding "intent" in the courts:
 "The three most basic elements of this common usage of `intent' are that (1) it is as state of mind (2) about consequences of an act or commission and not the act itself and (3) it extends not only to having in the mind a purpose (or desire) to bring about given consequences but also having in mind a belief (or knowledge) that given consequences are substantially certain to result from the act. It is also essential that the state of mind of intent exist when the act occurs." (Emphasis added.)
Prosser believes that the previously referred to Restatement definition in § 8A attempts to comport with this common usage.
At page 36, Prosser goes on to say:
 "the mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent. The defendant who acts in the belief or consciousness that the act is causing an appreciable risk of harm to another may be negligent, and if the risk is great the conduct may be characterized as reckless or wanton, but it is not an intentional wrong. In such cases CT Page 14071 the distinction between intent and negligence obviously is a matter of degree. The line has been drawn by the courts at the point where the known danger ceases to be only a foreseeable risk which a reasonable person would avoid, and becomes in the mind of the actor a substantial certainty."
Count four of this complaint does not set forth an intentional tort and its allegations sound in negligence not intent. Paragraph 5 says the death was "proximately caused" by the defendants in leasing to the café and their "intentional failure to enforce the terms of the written lease agreement." Subparagraph (a) states the defendants "knew or should have known" of the "dangerous business practices that occurred on the premises; the police were summoned numerous times. Subparagraph (b) then merely refers to the allegation that the café violated lease provisions and the Renehans failed to enforce the lease provisions thus allowing dangerous activities to continue — liability insurance was not procured, alcohol was served to people under 21, obligations to comply with city and state "laws including but not limited to safety" were not fulfilled and not enforced by the defendant landlords, there was a failure to "maintain or install" security personnel.
Paragraph 6 then says "But for the intentional conduct of the Renehan defendants in refusing or neglecting to enforce the terms of the lease." Mr. Epps would not have been killed. Paragraph 7 claims that "as a direct result of the Renehan defendants' intentional conduct in not enforcing the lease agreements," Mr. Epps lost his life and this caused consequent losses and damages resulting from his death.
There is no allegation here that the Renehan defendants, by failing to enforce the lease desired thereby to cause the alleged consequences of that act — that is, the death of the plaintiff's decedent. Nor is there any allegation, nor could there be, that in so failing to enforce the lease the Renehans had in mind a belief or knowledge that the death of Mr. Epps was substantially certain to result from that failure to enforce the lease provisions. This complaint merely alleges that there was a neglectful or unintentional failure to enforce lease provisions — that says nothing about the requisite "intent" to establish an intentional tort. Furthermore the fact that the death was proximately caused by the failure to enforce the lease CT Page 14072 provisions or that it was even a "direct result" of that failure or that "but for" that failure the death would not have resulted does not rise to the level of substantial certainty of injury or death to Mr. Epps or someone who might have been in the café at or near the time the killing occurred. "Proximate cause", "direct result" and "but for" causation are elements of causation necessary to every negligence claim — such allegations cannot be permitted to allow, without more, a claim in intentional tort or every negligence claim could also be cast in terms of an intentional tort claim. There are no allegations that the lease violations were such that the Renehans from past experience knew or believed that particular violations were substantially certain to present the danger of physical violence — there would have to be a claim that the Renehans knew or believed that because of their failure to enforce lease provisions every patron that came in was substantially certain to be shot and killed. How can that be said under the allegations of this complaint — the most that can be said is that such a consequence was more likely than not to occur or at the most that such a risk was great. An example in the Restatement shows a situation where the substantial certainty test is met and indicates why it cannot be met here.
 "1. A throws a bomb into B's office for the purpose of killing B. A knows that C, B's stenographer, is in the office. A has no desire to injure C, but knows that his act is substantially certain to do so. C is injured by the explosion. A is subject to liability to C for an intentional tort." (§ 8A, Comment pp. 15-16 of Restatement (Second) Torts.)
In this case, it is difficult to understand how the violation of any of the lease provisions referred to in the complaint could be said to establish indicia of a state of mind that knew or believed Mr. Epps or someone in the café at the time he was, was substantially certain to be shot. Would it be suggested by the failure to carry liability insurance? Serving of alcohol to people under 21 or failure to have security personnel — would that create a belief of substantial certainty that shooting and death would thereby result as to every patron? The fact that the police were called to the café on numerous instances in the year before the shooting for unspecified reasons — would that mean that a person with knowledge of this could be substantially certain a shooting was going to occur on the night Mr. Epps was shot as opposed to any other night? CT Page 14073
To sum up, even if the pleadings are given their most favorable reading as they must be, although the Renehans intentionally failed to enforce the lease provisions mentioned in count four, there are no factual allegations to support the notion that in doing so they knew or believed the death of Mr. Epps, at the date and time when that happened, was substantially certain to occur. We are, after all, a fact pleading state. The motion to strike count four is granted.
Corradino, J.